UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

MARTHA MEEKS,                          )
                                       )
    *Plaintiff*,                        )
                                       )
v.                                     )          No. 1:17-cv-60-SKL
                                       )
COMMISSIONER OF SOCIAL SECURITY,       )
                                       )
    *Defendant*.                        )

<u>**MEMORANDUM AND ORDER**</u>

Plaintiff Martha Meeks ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB") and supplemental security income ("SSI"). Each party has moved for judgment [Docs. 18 & 24] and filed supporting briefs [Docs. 19 & 25]. This matter is now ripe. For the reasons stated below, (1) Plaintiff's motion for judgment based on the administrative record [Doc. 18] will be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 24] will be **GRANTED**; and the decision of the Commissioner will be **AFFIRMED**.

## I.    ADMINISTRATIVE PROCEEDINGS

Plaintiff filed her application for DIB on June 7, 2012, and for SSI on May 1, 2013, alleging disability beginning December 27, 2010 (Tr.[1] 70, 160). Plaintiff's claim was denied initially and on reconsideration at the agency level. After a hearing was held on October 15, 2014, the administrative law judge ("ALJ") found on November 10, 2014, that Plaintiff was not under a

---

[1] Defendant filed the transcript ("Tr.") of the administrative proceedings in this case manually, for the stated reason that it was not available in an electronic format [Doc. 11].

disability as defined in the Social Security Act (Tr. 67-78). On June 9, 2015, the Social Security Administration ("SSA") Appeals Council remanded the case back to the ALJ because "the hearing decision in the instant case [did] not contain a complete exhibit list." (Tr. 85-86). The Appeals Council instructed the ALJ to "offer the claimant an opportunity for a hearing, address the evidence which was submitted with the request for review, take any further action needed to complete the administrative record and issue a new decision." (Tr. 86). On remand, the ALJ properly assembled the administrative record, and on November 17, 2015, the ALJ again concluded that Plaintiff was not under a disability as defined in the Social Security Act (Tr. 11-25). The Appeals Council denied Plaintiff's request for a second review, making the ALJ's decision the final decision of the Commissioner (Tr. 6-8). Plaintiff timely filed the instant action [Doc. 1].

## II.    FACTUAL BACKGROUND

### A.    Education and Employment Background

Plaintiff was born January 9, 1969, which made her a "younger individual," on the alleged onset date (Tr. 23). Plaintiff has a high school education and is able to communicate in English (Tr. 23). Plaintiff has past relevant work as a psychiatric aide, a certified nursing assistance, a daycare worker, and a waitress (Tr. 23).

### B.    Medical Records

In her Disability Report, Plaintiff alleged disability due to bipolar disorder, social anxiety disorder, post-traumatic stress disorder ("PTSD"), generalized depression, gastroesophageal reflux disease ("GERD"), and a spastic colon (Tr. 206). Plaintiff [Doc. 19 at Page ID # 54-57] and the ALJ (Tr. 19-23) each set forth a detailed, factual recitation with regard to Plaintiff's medical record, vocational record, and the hearing testimony. Defendant generally adopts the statement of

facts set forth by the ALJ, but includes citation to the record throughout her argument [Doc. 25 at Page ID # 75-86]. There is no need to summarize the medical records herein, but the relevant records have been reviewed and considered.

### C. Hearing Testimony

The first administrative hearing in this case took place on October 15, 2014, at which Plaintiff and a vocational expert ("VE") testified (Tr. 1081-114). On October 14, 2015, following remand from the Appeals Council, a second administrative hearing took place, at which Plaintiff and a different VE testified (Tr. 1115-36). The Court has reviewed the testimony from both hearings.

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The SSA determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted).  The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing.  *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

**B.    The ALJ's Findings**

The ALJ found that Plaintiff meets the insured status requirements through September 30, 2015[2] (Tr. 16).  At step one of the sequential process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date, December 27, 2010 (Tr. 16).  At step two,

_____

[2] The Court notes that the relevant time period for Plaintiff's DIB claim is from December 27, 2010 (her alleged onset date) to September 30, 2015, the date her insured status expired.  *See* 20 C.F.R. § 404.130; *see also* 42 U.S.C. § 423.  The relevant time period for Plaintiff's SSI claim is May 1, 2013, until November 17, 2015, the date the ALJ issued her decision, because SSI applicants are not entitled to benefits until "the month following the month" that the application is filed.  20 C.F.R. § 416.335.

the ALJ found Plaintiff had the following severe impairments: bipolar disorder, major depressive disorder, histrionic personality disorder, social anxiety, status post possible mild remote cardiovascular infarction, gastroesophageal reflux disease (GERD), and carpal tunnel syndrome (Tr. 17). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 17).

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations:

> [Plaintiff] would need simple, routine and repetitive work; few and gradually introduced changes in the workplace; no interaction with the general public and interaction with supervisors and coworkers should be no more than on an occasional basis (superficial interaction); and the work should be performed in a well-spaced work environment; handling and fingering would be limited to frequent.

(Tr. 19). At step four, the ALJ found Plaintiff was unable to perform any past relevant work (Tr. 23). At step five, however, the ALJ found Plaintiff was able to perform other work existing in significant numbers in the national economy such as hand packager, garment folder, and final assembler (Tr. 23-24). These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Act from the alleged onset date through the date of the ALJ's decision (Tr. 24-25).

## IV. ANALYSIS

Plaintiff asserts this matter should be reversed and/or remanded under sentence four for several reasons: (1) the "ALJ's residual functional capacity finding is not supported by substantial evidence," (2) the "decision omits substantial and material evidence and fails to adequately explain

the ALJ's reasoning," and (3) the "ALJ improperly evaluated Plaintiff's credibility." [Doc. 19 at Page ID # 57-62]. The Commissioner counters that the ALJ's RFC determination is supported by substantial evidence, and that the ALJ adequately explained her reasoning and properly evaluated Plaintiff's credibility [Doc. 25 at Page ID # 76-86].

### A.    Standard of Review

The Social Security Act authorizes "two types of remand: (1) a post-judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing." 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from

its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence that was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

### B.     The ALJ's RFC Finding

The ALJ found Plaintiff had the RFC to perform light work as defined in 20 CFR

404.1567(b) and 416.967(b) with the following additional limitations:

> [Plaintiff] would need simple, routine and repetitive work; few and gradually introduced changes in the workplace; no interaction with the general public and interaction with supervisors and coworkers should be no more than on an occasional basis (superficial interaction); and the work should be performed in a well-spaced work environment; handling and fingering would be limited to frequent.

(Tr. 19). In determining the mental component of Plaintiff's RFC, the ALJ found that Plaintiff was moderately limited in her ability to perform activities of daily living and with regard to her social functioning, and that Plaintiff had marked limitations with regard to concentration, persistence, or pace (Tr. 18).

Plaintiff argues that she has greater mental health limitations than those found by the ALJ, as evidenced by the fact that she has "a history of eight inpatient admissions and three suicide attempts." [Doc. 19 at Page ID # 58 (citing Tr. 895)]. Plaintiff also contends the ALJ erred in finding that Plaintiff's conditions improved with treatment; she argues that any improvement she experienced was due to the "transient nature of bipolar disorder." [*id.*]. Ultimately, Plaintiff contends that the ALJ should have found she had a marked limitation in social functioning. Such a finding, would, Plaintiff argues, qualify her for benefits under Listing 12.04 (for bipolar disorder).

A claimant's RFC is the most the claimant can do despite his or her impairments. 20 C.F.R. § 404.1545(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). Moreover, "[a] claimant's severe impairment may or may not affect

his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth*, 217 F. App'x at 429. An ALJ is responsible for determining a claimant's RFC after reviewing all of the relevant evidence in the record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

As explained below, the Court finds the ALJ's conclusions regarding Plaintiff's mental limitations are supported by substantial evidence in the record. Therefore, the Court finds no error with the ALJ's conclusion that Plaintiff did not qualify for benefits under Listing 12.04. The Court further finds the ALJ's restrictive mental RFC adequately accommodates her moderate restrictions in social functioning and performing activities of daily living, and her marked restriction with regard to concentration, persistence, or pace.

Plaintiff contends the ALJ erred in finding she had only moderate limitation in her social functioning.[3] However, the ALJ's finding that Plaintiff had only moderate limitations with regard to social functioning is supported by substantial evidence in the form of the opinions of the State agency mental health consultants (and the evidence showing improvement with medication, discussed below). The ALJ assigned the State agency consultants' opinions concerning Plaintiff's mental health great weight (Tr. 22-23). In December 2012, Eran Stanley, M.D., opined that Plaintiff was only moderately limited in her ability to interact with the public, her ability to accept instructions and respond appropriately to criticism from supervisors, and her ability to get along with coworkers or peers without distracting them. Dr. Stanley wrote that she was not significantly limited in her ability to ask simple questions, request assistance, maintain socially appropriate

---

[3] Plaintiff does not challenge the ALJ's finding that she had only moderate limitation in her ability to perform activities of daily living.

behavior, and adhere to basic standards of neatness and cleanliness (Tr. 34). Dr. Stanley specifically considered Listing 12.04, and found that Plaintiff did not qualify (Tr. 32). Rebecca Joslin, Ed. D., made the same findings in June 2013 (Tr. 60-61).

Plaintiff does not address the findings of Dr. Stanley or Dr. Joslin, nor does she point to any contradictory medical opinion evidence in the record. Instead, she points out that the record reflects she had serious interpersonal problems with other women at the shelter where she was living, she has experienced periods of self-isolating behavior, and she has intense mood swings and social anxiety [Doc. 19 at Page ID # 59]. However, the ALJ acknowledged that Plaintiff had these issues (Tr. 19-21).

The ALJ specifically discussed how Plaintiff struggled to get along with the women she was living with in group homes but that at least as of June 2014, Plaintiff's mental condition was stable "and she was doing well with medications." (Tr. 20). By September 2014, Plaintiff was living as a caretaker to an "older woman." (Tr. 20). By October 2014, Plaintiff was not getting along with this woman. Plaintiff then apparently did not receive any treatment from October 2014 until April 2015, as the ALJ notes there is a gap in the treatment records. In April 2015, Plaintiff went to the Mental Health Cooperative for a psychological assessment, her medication was adjusted, and by May 2015, she reported that the medication had improved her symptoms by 50% (Tr. 1009). In fact, she reported that she had run out of the medication for seven days prior to the May appointment, and she could "tell her mood has significantly worsened over the past week with increased irritability and anger, crying spells, increased impulsivity, and has been having increased paranoid ideation, auditory and visual hallucinations that had previously significantly decreased." (Tr. 1009).

10

Then, as the ALJ notes, by July 2015, Plaintiff had another significant event, which occurred after she lost a job and had to move into another shelter. She first went to the Mental Health Cooperative complaining of increased depression, and was admitted to Moccasin Bend Mental Health Institute. She informed treatment providers that she had a plan to steal a friend's Xanax and use it to commit suicide. However, as the ALJ notes, once Plaintiff was admitted to and administered proper medication, she "significantly improved" to the point that she was discharged four days after being admitted (Tr. 21, 983).

These notes in the record show that, contrary to Plaintiff's contention, her condition is considerably improved when she takes her medication as prescribed, and she appears to have no significant trouble obtaining her medication or attending medical appointments. There is no doubt that Plaintiff was the victim of extensive abuse that no person should ever have to endure and suffers from resulting serious mental health issues. Nevertheless, it is also clear from the record that the ALJ did not err in finding that Plaintiff's mental health issues are controlled with medication to an extent consistent with the RFC. As evidenced by the volume and content of her treatment records and the number of appointments she attended during the relevant time, Plaintiff has the ability to attend her appointments, discuss her issues with her doctors in a forthcoming manner, and take her medication to stabilize her condition. The record also reflects that Plaintiff's symptoms—mood swings, anxiety, hallucinations—are significantly reduced when she is on the appropriate medication. It is beyond serious doubt that under such circumstances her ability to interact socially is also improved.

The Court concludes that the ALJ did not err in finding Plaintiff is only moderately limited in her ability to socially function. Plaintiff does not challenge the ALJ's finding that she has a

marked limitation in her ability to maintain concentration, persistence, or pace, or the ALJ's finding that she has only a moderate limitation in ability to perform activities of daily living. Because Plaintiff must have a marked limitation in two of the paragraph B criteria (or have extended episodes of decompensation), she does not qualify as disabled under Listing 12.04.[4]

The question that remains is whether the RFC adequately accommodates Plaintiff's mental limitations. As noted, the ALJ crafted a limited mental RFC—simple, routine, repetitive work in a consistent, well-spaced environment where she is not required to have significant interaction with other people. Plaintiff cites no case which holds that such a restrictive mental RFC is not adequate to account for the limitations the ALJ found. In particular, the limitation for simple, routine, and repetitive work with few changes addresses the limitation in concentration, persistence, or pace. The State agency consultants (whose opinions were assigned great weight) both found that Plaintiff could understand and remember simple work tasks, and could concentrate and persist at those tasks for a complete eight-hour workday (Tr. 34, 61). They further found that Plaintiff was "not significantly limited" in her ability to perform activities within a schedule and sustain an ordinary routine without special supervision (Tr. 33, 60). The reduced exposure to the public, coworkers, and supervisors, and the well-spaced work environment, accommodate Plaintiff's limitations in social functioning.

---

[4] Paragraph B of the version of Listing 12.04 in effect at the time of the ALJ's decision required that Plaintiff establish at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04. Recent revisions to the rules regarding mental impairments, effective January 17, 2017, have resulted in new paragraph B criteria. *See* 81 Fed. Reg. 66138-01, 2016 WL 5341732, at *66161 (Sept. 26, 2016). Because these revisions were not in effect at the time Plaintiff applied for DIB and SSI or when the ALJ rendered her decision, the Court will apply the former paragraph B criteria, as the parties do.

Plaintiff also argues that her past hospitalizations and reported suicide attempts would preclude gainful employment due to absenteeism. However, the ALJ clearly appreciated the fact that Plaintiff had been admitted for psychiatric care during the relevant period, and she nevertheless found Plaintiff capable of performing simple, routine, repetitive work in a consistent, well-spaced environment where she is not required to have significant interaction with other people. Plaintiff does not persuasively argue or cite to evidence in the record showing that she is likely to experience such episodes in the future, particularly if she continues to seek treatment and take her medication.

Plaintiff also very briefly argues that her marked limitation in her ability to maintain concentration, persistence, or pace, in and of itself, would preclude all employment [Doc. 19 at Page ID # 58]. She contends that the VE testified at the first hearing that an individual who "'would not be able to maintain focus and concentration on a consistent basis' would be incapable of sustaining gainful employment." [*id.* (citing Tr. 1112)]. Plaintiff misinterprets the exchange between the ALJ and the VE. The complete question posed was as follows:

> Q.    All right. Sir, if you would again assume that same hypothetical individual… but further assume . . . *that this individual would not be able to maintain focus and concentration on a consistent basis due to interruption from psychiatric symptoms, and as such would not be deemed reliable in attending to the work at hand*, cannot be – could not meet production norms, and also that this individual would have . . . a difficult time interacting with coworkers and supervisors even on an occasional, casual basis due to emotional issues. Would that allow for any of the work that you previously gave us?
>
> A.    No, your honor. No work.
>
> Q.    Any other work?
>
> A.    No work in the regular competitive labor market.

[Examination of VE by Plaintiff's Attorney]

Q.     Dr. Flynn, first of all, on hypothetical number two, either one of those – is it true that either one of those restrictions individually would eliminate work.

A.     Yes.

(Tr. 1112).

The ALJ's question to the VE included not just a limitation that the individual "would not be able to maintain focus and concentration on a consistent basis," but further that the individual "would not be deemed reliable in attending to the work at hand." (Tr. 1112). Plaintiff cites to no authority equating a "marked limitation" in concentration, persistence or pace with an individual being deemed unreliable in attending to work at hand, and the Court has found none.

For these reasons, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff can perform simple, routine, repetitive work in a consistent, well-spaced environment where she is not required to have significant interaction with other people. Plaintiff's motion will be denied in this regard.

## C.     The ALJ's Discussion of the Evidence

Plaintiff next argues that the ALJ's decision should be reversed because the ALJ failed to mention "numerous, highly relevant pieces of evidence which support Plaintiff's assertion that her mental health is completely disabling." [Doc. 19 at Page ID # 59]. Plaintiff's position is that the ALJ impermissibly "cherry picked" the evidence.

It is generally recognized that an ALJ "may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding." *Biermaker v. Comm'r of Soc. Sec.*, No. 14-12301, 2016 WL 7985329, at *9 (E.D. Mich. June 13, 2016) (quoting *Smith*

*v. Comm'r of Soc. Sec.*, 2013 WL 943874, at *6 (N.D. Ohio 2013) (other citations omitted)), *report and recommendation adopted,* No. 14-12301, 2016 WL 5027593 (E.D. Mich. Sept. 20, 2016). This "cherry picking" argument, however, is frequently made but seldom successful because "the same process can be described more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (holding "we see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence"); *accord DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (noting that "cherry picking" allegations are seldom successful because crediting them would require courts to re-weigh record evidence). The Sixth Circuit has consistently upheld the discretion vested in ALJs to weigh conflicting record evidence in assessing disability status. *See id*.

Here, Plaintiff has not "persuasively shown that the ALJ erred in conducting [the] difficult task" of weighing the record evidence. *White,* 572 F.3d at 284. Contrary to Plaintiff's argument, the ALJ properly considered and discussed the evidence in the record as a whole and discussed both positive and negative findings.

Plaintiff complains that the ALJ did not expressly mention the fact that Plaintiff, as a child, suffered pervasive sexual abuse over many years at the hands of a close family member. This argument is unavailing because the ALJ is not required to discuss every piece of evidence in the record, "as long as her factual findings . . . show that she implicitly considered the record as a whole." *Rudd*, 531 F. App'x at 730 (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006)). Plaintiff admits that the ALJ was correct in finding that "one of [Plaintiff's] primary sources of alleged depression relates to a domestic situation in July of 2010, in which a child she had been caring for and raising for several years was returned to his natural

Mother (Exhibit 1F)." (Tr. 19; *see also* Doc. 19 at Page ID # 59-60). Plaintiff characterizes the 2010 situation as causing an "exacerbation" of her mental health issues that were caused by her childhood abuse. However, Plaintiff's alleged onset date of disability was December 27, 2010 (Tr. 14). Therefore, arguably the 2010 event that "exacerbated" Plaintiff's mental health issues to the point of allegedly causing disability is more relevant to Plaintiff's DIB and SSI claim than the abuse Plaintiff suffered years or decades earlier. Moreover, the ALJ cited the exhibits Plaintiff relies on in her brief as proof that Plaintiff has suffered "flashbacks, nightmares, and intrusive thoughts regarding that abuse." [Doc. 19 at Page ID # 60 (citing pages from Exhibit 1F and 7F of the transcript); *see also* Tr. 20 (ALJ's cites Exhibits 1F and 7F)]. The Court finds no error with the ALJ's failure to explicitly mention Plaintiff's childhood sexual abuse.

Plaintiff also argues the ALJ cherry picked the evidence by overlooking the state of her mental health in 2013. She notes the ALJ failed to mention that she was admitted to a crisis unit in March 2013, where she reported hallucinations. She was described by the treatment provider as "almost catatonic." (Tr. 700). Although she was discharged after receiving medication, she returned within a month indicating she was still experiencing hallucinations, insomnia, anxiety, and a manic episode (Tr. 675). The ALJ found that Plaintiff had improved by the end of 2013 (Tr. 20), but Plaintiff cites to records showing that in October 2013, Plaintiff reported lifelong rapid mood cycling, sleep disturbances, depression and homelessness (Tr. 622-23). In December 2013, Plaintiff reported that she was still experiencing trauma symptoms from her childhood abuse, felt despair over the loss of the child she had been raising, and had recently had a fight with her case manager (Tr. 585).

Although the ALJ did not specifically address the March 2013 admission, the ALJ

discussed other hospital admissions for mental health issues, including one in 2011 (Tr. 19) and one in 2015 (Tr. 21). The ALJ also discusses other mental health issues Plaintiff faced, for example difficulty getting along with other women at a shelter in June and October 2014 (Tr. 20). On December 31, 2013, Plaintiff did discuss her childhood trauma and her despair over her lost relationship with the child, but the counselor she spoke with indicated at that time that she had a positive interaction with Plaintiff, and that she observed no high risk symptoms (Tr. 585). Just two weeks prior, on December 13, 2013, Plaintiff reported that she was taking her medication and that it was working well, she was able to leave the house several times a week and even went Christmas shopping with her mother-in-law (Tr. 587-88).

The ALJ discusses Plaintiff's mental health treatment in a fair amount of detail. The ALJ acknowledges that Plaintiff has serious mental health issues that require treatment, including medication, and the ALJ describes the path of Plaintiff's treatment during the relevant time period. The ALJ does not discuss every serious downturn in Plaintiff's mood or stability, nor does she cite every subjective complaint reported by Plaintiff to her counselors. While the ALJ could have specifically addressed Plaintiff's March 2013 admission to the crisis unit, it was not error to fail to do so. The Court finds the ALJ's overall portrayal of Plaintiff's treatment and care is supported by substantial evidence, particularly the improvement and stability Plaintiff achieved with proper medication. The Court, therefore, finds the ALJ did not impermissibly cherry pick the evidence. Plaintiff's motion will be denied in this regard.

### D.    The ALJ's Assessment of Plaintiff's Credibility

Plaintiff also argues that the ALJ erred in evaluating her credibility [Doc. 19 at Page ID # 61-62]. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great

weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citation omitted). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2.[5] "It is not sufficient to make a conclusory statement 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* The ALJ need not, however, address every factor listed in SSR 96-7p when making a credibility determination. *O'Mary v. Colvin*, No. 3:13-CV-458-TAV-CCS, 2014 WL 4348183, at *12 (E.D. Tenn., Sept. 2, 2014) (citation omitted).

Where an ALJ's credibility assessment is fully explained and not at odds with uncontradicted evidence in the record, it is entitled to great weight. *See King v. Heckler*, 742 F.2d

---

[5] The SSA published SSR 16-3p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims*, which supersedes and rescinds SSR 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*. SSR 16-3p eliminates use of the term "credibility" from SSA policy as the SSA's regulations do not use this term, and it clarifies that subjective symptom evaluation is not an examination of a claimant's character. *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). SSR 16-3p took effect in March 2016, several months after the ALJ issued his decision on September 15, 2015. SSR 16-3p instructs ALJs in accordance with the applicable regulations to consider all of the evidence in the record in evaluating the intensity and persistence of symptoms after finding the claimant has a medically determinable impairment, which is exactly what the ALJ has done in this matter, so it is not necessary to determine whether SSR 16-3p applies retroactively. *See Dooley v. Comm'r of Soc. Sec.*, No. 16-5146, 2016 WL 4046777, at *5 n.1 (6th Cir. July 28, 2016). As the record in this case and much of the existing case law refers to "credibility" evaluations, this report will occasionally refer to the ALJ's analysis using the same term.

968, 974-75 (6th Cir. 1984) (noting the rule that an ALJ's credibility assessment is entitled to "great weight," but "declin[ing] to give substantial deference to the ALJ's unexplained credibility finding" and holding it was error to reject uncontradicted medical evidence); *see also Ulman v. Comm'r of Soc. Admin.*, 693 F.3d 709, 714 (6th Cir. 2012) ("As long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess."); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) (citation omitted) (concluding the ALJ was entitled to "rely on her own reasonable assessment of the record over the claimant's personal testimony"); *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) (citation omitted) (stating the ALJ's credibility assessment is entitled to "substantial deference"). Substantial deference has been held to mean that "an [ALJ's] credibility findings are virtually 'unchallengeable.'" *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (quoting *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 113 (6th Cir. 2010)).

Regarding Plaintiff's credibility, the ALJ found:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> For example, the claimant is a serial filer for disability and there is no medical source statement in the record from any of her treatment providers. In addition, the claimant alleges chronic depression and mood instability. However, as detailed above, the record indicates that her symptoms respond very well to proper treatment, medication management and compliance. In addition, as noted above, the claimant's more recent records show that she was active in a governing counsel, she is more talkative and out with friends. Furthermore, the claimant has provided care for an older woman, she has worked part-time at IHOP and was more recently applying for 2 different jobs. In conclusion, I have considered all of

the claimant's allegations and have reviewed the entire record and [have] found that although she does have work related limitations due to her physical and mental impairments, the record does not support a more limiting residual functional capacity than the one detailed above.

(Tr. 23).

Earlier in the decision, the ALJ also detailed the July 2015 episode when Plaintiff reported to treatment providers that she planned to steal her friend's Xanax and use it to commit suicide. The ALJ noted that this episode occurred shortly after the Appeals Council entered its order vacating the ALJ's first decision and remanding the case (Tr. 21, 85-86). Concerning Plaintiff's credibility, the ALJ wrote:

I also note that this episode occurred just after the Appeals Council Order in this case and was a threat only based on the claimant's plan to steal medication, a fact that does not support her overall credibility. Nonetheless, these records then document that the claimant's condition significantly improved after receiving proper medication management treatment to the point where she was discharged on July 13, 2015 (Exhibit 16F).

(Tr. 21).

Plaintiff argues it was improper for the ALJ to consider the details of her plan to commit suicide as not supporting her credibility. She also argues she is not a serial disability filer, and that her activities of daily living do not indicate an ability to perform full-time work. The Court is concerned by the ALJ's reference to Plaintiff's alleged suicide plan and to Plaintiff as being a "serial filer" as evidence of a lack of credibility. Nevertheless, the Courts finds substantial support for the remaining credibility findings and will therefore deny Plaintiff's motion in this regard.

First, regarding the plan to steal her friend's Xanax, the Court agrees with Plaintiff that if she was truly suicidal, actions contemplated in furtherance of committing suicide, even theft of medication, are not good evidence of her credibility or lack thereof. As the Commissioner points

out, however, a fair reading of the ALJ's decision is that it was the timing of the reported suicide plan that the ALJ found to be suspicious, not the method. Regardless, this was only one point the ALJ considered, and it does not appear to have even been a significant point, as it is addressed separately from the rest of the ALJ's credibility analysis.

Second, it isn't clear from the record how many previous applications Plaintiff has filed. Pages 27 and 53 of the transcript, which are from documents generated by the SSA, list only one previous application. The Commissioner states in her brief that the "ALJ correctly noted that Plaintiff's previous *applications* for disability benefits were denied," and cites pages 191, and 193-94 of the transcript [Doc. 25 at Page ID # 84]. There is some indication on page 191 that Plaintiff filed three previous applications that have been denied, including two with alleged onset dates of June 2002 and one with an alleged onset date of December 2009. However, pages 193-94 indicate only one prior filing. Giving Plaintiff the benefit of the doubt and assuming she has only filed one previous application, the Court is not persuaded that a total of two applications for disability benefits renders a person a "serial filer," or negatively impacts credibility as the ALJ found. Nor is the Court convinced that filing three prior applications would indicate a credibility concern. Nevertheless, the Court finds this possible error is harmless in light of the rest of the ALJ's credibility analysis and the deference that is owed to the ALJ's determination of credibility.

For instance, Plaintiff's fairly extensive activities of daily living and the significant improvements in symptoms she experiences when she is compliant with her medication were both proper factors for the ALJ to consider. *See* SSR 96-7p, 1996 WL 374186, at *3 (listing factors). The Court discussed Plaintiff's improvement with medication earlier in this decision. And, even if her activities of daily living do not, by themselves, conclusively establish an ability to perform

full-time work, they do show that Plaintiff is capable of a fairly high level of functioning, especially being responsible for caring for another, "older" person and serving on a governing council. Moreover, the ALJ notes that there is no medical source statement in the record that would support Plaintiff's claim of disability and Plaintiff does not address this fact or point to such a statement in the record. The Court finds that while the ALJ's credibility determination is flawed in some respects, it is supported by substantial evidence in the record. Accordingly, Plaintiff's motion will be denied in this regard.

## V.     CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

1)  Plaintiff's motion for judgment on the administrative record [Doc. 18] is **DENIED**;

2)  The Commissioner's motion for summary judgment [Doc. 24] is **GRANTED**; and

3)  The Commissioner's decision denying benefits is **AFFIRMED**.


SO ORDERED.

ENTER:

s/ *Susan K. Lee*
_____
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE